Christine E. DAVIS, et al.,
Petitioners, Appellants,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

Nos. C4–93–874, C6–93–1122, C8–93–1123,
C3–93–1143, C7–93–1226, C9–93–1227, C0–
93–1228, C2–93–1229, C4–93–1393 and C6–
93–1394.

Supreme Court of Minnesota.

June 24, 1994.

Faison T. Sessoms, Minneapolis, and Richard L. Swanson, Chaska, and Howard S. Carp, Minneapolis, and Paul B. Ahern, Froberg & Ahern, Minnetonka, and James H. Leviton, Minneapolis, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Nancy J. Bode, Jeffrey F. Lebowski, Joel A. Watne, Asst. Attys. Gen., St. Paul, for respondent.

## OPINION

KEITH, Chief Justice.

This case,[1] involving consolidated appeals, grew out of the legislature's response to this court's decision in *Friedman v. Commissioner of Public Safety*, 473 N.W.2d 828 (Minn. 1991). *Friedman* held that under the Minnesota Constitution, DWI arrestees have a limited right to have a reasonable amount of time to attempt to consult with counsel by telephone before deciding whether to comply with the statutory requirement that they submit to implied consent testing. 473 N.W.2d at 837. After the decision in *Friedman* was filed, the legislature changed the standard implied consent advisory that law enforcement personnel give DWI arrestees and made immediate hardship relief for prehearing revocation unavailable until 15 days after the revocation for a first offender.

The two key issues created by this legislation are: (1) whether the current advisory violates due process, federal or state, by failing to inform the arrestee (a) that one of the consequences of violating the implied consent law (by refusing a test or failing a test) is loss of license and (b) that the arrestee has a right to an additional independent test while in custody; and (2) whether the immediate *prehearing* revocation of a driver's license for violating the implied consent law still comports with due process, as this court held in *Heddan v. Dirkswager*, 336 N.W.2d 54 (Minn.1983), now that prompt hardship relief from immediate revocation is unavailable.

## I.

Before *Friedman*, the statutory standard advisory informed each DWI arrestee,

among other things: (a) Minnesota law requires that the person take a test to determine if the person is under the influence of alcohol or a controlled substance; (b) if the person refuses testing, the person's driver's license will be revoked for at least one year; (c) if the test is taken and the results show an alcohol concentration of .10 or more, the person's driver's license will be revoked for at least 90 days; (d) whether the test is taken or refused, the person may be subject to criminal penalties for DWI; (e) after testing the person may consult with an attorney; (f) after testing the person has the right to obtain additional testing, while in custody, by someone of the person's choosing; and (g) the refusal to take a test may be offered in evidence against the person at trial. *See* Minn.Stat. § 169.123, subds. 2(b)(1)–(4), 2(b)(6)–(7) (Supp.1991).

Following *Friedman* the legislature amended the advisory, effective August 1, 1993. Specifically, the legislature dropped (b), (c), (d), (f) and (g) above from the old advisory; retained (a) and (e); and added a statement that refusal to take a test is a crime. The new advisory now tells the arrestee: (a) Minnesota law requires that the person take a test to determine if the person is under the influence of alcohol or a controlled substance; (b) refusal to take a test is a crime; (c) a test will be compelled if the arresting officer has probable cause to suspect a violation of criminal vehicular homicide or injury laws; and (d) the person has the right to consult with an attorney, but consultation "cannot unreasonably delay administration of the test." Act of May 24, 1993, ch. 347, § 10, 1993 Minn.Laws 2450, 2457–58, *codified at* Minn.Stat. § 169.123, subd. 2(b) (Supp.1993).

Upholding the legislature's action, the court of appeals in this appeal focused on this court's statement in *Friedman* that "[a]n attorney, not a police officer, is the appropriate source of legal advice." *Davis*, 509 N.W.2d at 387 (quoting *Friedman*, 473 N.W.2d at 833). The court of appeals concluded, "Once the supreme court announced the limited

---

1. Shortly after oral argument in this case, we issued an order affirming the decision of the court of appeals in *Davis v. Commissioner of* *Public Safety,* 509 N.W.2d 380 (Minn.App.1993), and stating that a written opinion of the court would be filed at a later date.

right to counsel in *Friedman,* the legislature had the power to shift from the police officer to the attorney the burden of informing the driver about the details of rights and sanctions under the implied consent law." 509 N.W.2d at 387.

In *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the United States Supreme Court held, *inter alia,* that admission in a DWI prosecution of evidence of the defendant's refusal to submit to blood alcohol testing does not violate federal due process even though the defendant was not warned that his refusal could be used against him at trial.[2]  In reaching this conclusion, the Court rejected the argument that "the warnings given here implicitly assure a suspect that no consequences other than those mentioned will occur." 459 U.S. at 566, 103 S.Ct. at 924. The Court further noted, "Importantly, the warning that he could lose his driver's license made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." *Id.*

Earlier, in *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), the Court had held that the Massachusetts *pre-hearing* revocation scheme satisfied federal due process in large part because a prompt post-suspension hearing was available, even though the state did not notify the driver of the availability of such a remedy. Dissenting, Justice Stewart argued that the scheme violated due process in part because " 'reasonable' notice of a procedural right is itself integral to due process." *Id.* at 27–28, 99 S.Ct. at 2625–2626 (Stewart, J., dissenting).

It thus appears that appellant drivers' argument that revocation of their licenses violates federal due process because they were not properly warned is an argument that is unlikely to find support from a majority of the Justices of the United States Supreme Court, as presently constituted, particularly since Minnesota drivers are given a reasonable opportunity to attempt to speak with counsel.

Appellant drivers also argue that *California v. Trombetta,* 467 U.S. 479, 104 S.Ct.

2528, 81 L.Ed.2d 413 (1984), supports holding at least that the lack of a warning as to the right to additional testing violates federal due process.  *Trombetta* held that federal due process does not require that police preserve breath samples in order to introduce the breath test results at trial. *Id.* at 491, 104 S.Ct. at 2535. The Court concluded, on the basis of the reliability of breath test procedures, that it was extremely unlikely that the failure to preserve breath samples for independent testing deprived the defense of exculpatory evidence. *Id.* at 489, 104 S.Ct. at 2534. Contrary to what appellants argue, the opinion was not based in part on the availability of independent testing. The Court said, "[I]t is irrelevant to our inquiry that California permits an accused drunken driver to have a second blood-alcohol test conducted by independent experts, since there is no evidence on this record that [the defendants] were aware of this alternative." *Id.* at 491 n. 11, 104 S.Ct. at 2535 n. 11.

The real question is whether this court ought to interpret the due process clause of the Minnesota constitution as requiring that law enforcement officers give a more complete implied consent advisory than was previously required by statute.

The state argues that this court has already in effect held that due process does not require the giving of an implied consent warning other than that prescribed by the legislature. The state cites *State v. Abe,* 289 N.W.2d 158, 161 (Minn.1980) (rejecting claim that, in context of that case, the failure to give a driver *who took a test* a warning that a 90–day revocation would be imposed if he failed the test did not violate the right to due process), and *State v. Gross,* 335 N.W.2d 509, 510 (1983) (paraphrasing *Abe* and stating that the only advisory required is that mandated by statute). The state also cites *McDonnell v. Commissioner of Public Safety,* 473 N.W.2d 848, 853 (Minn.1991). In that case the driver argued that the implied consent advisory misled her into thinking that she might be prosecuted for refusing to submit to testing even though her driver's li-

---

**2.** The Court also held that admission of a defendant's refusal to submit to testing does not violate the defendant's privilege against compelled

self-incrimination. *See* 459 U.S. at 564, 103 S.Ct. at 923; *McDonnell v. Commissioner of Public Safety,* 473 N.W.2d 848, 855–56 (Minn.1991).

cense had not been revoked before. In answering the claim, this court noted that the United States Supreme Court in *Neville* had held that a state does not violate due process by choosing not to advise an arrestee of all the consequences of refusing to submit to implied consent testing. *McDonnell,* 473 N.W.2d at 853. We do not believe the language in these cases creates an insurmountable barrier to holding that the due process clause of the Minnesota Constitution requires the giving of a more complete implied consent advisory.

We also do not think that it is an answer to say that the legislature could, if it wanted, deny the arrestee any choice and simply allow police with probable cause to obtain the sample needed pursuant to basic Fourth Amendment law, which the United States Supreme Court allowed in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The fact that the state might allow police to obtain the sample they want pursuant to the Fourth Amendment, does not answer the question of what procedure is due an arrestee if the legislature decides to forego this approach and give the arrestee the option of not complying with the statutory obligation to submit to testing.

Under the present advisory, those arrestees who consult with counsel probably do not have any practical cause to complain about the lack of a more detailed advisory. Those who comply with the requirement that they submit to testing probably do not have a practical basis for complaining about the absence of some of the warnings because we said in *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512, 517 n. 3 (Minn.1985), *appeal dismissed,* 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985), that an attorney may not ethically advise an arrestee not to take a test, since it is required by law. Those who take the test can still complain about the absence of a warning concerning their statutory right to a second test by an independent tester while still in custody. Those who do not or cannot reach counsel have a practical basis for arguing that if they had been given a proper advisory they might have taken the test.

While we are troubled by the deficiencies of the current advisory, we are unwilling at this time to say that the advisory violates procedural due process under the Minnesota Constitution.

## II.

■ The other main issue raised by the consolidated appeals is whether the immediate *prehearing* revocation of a driver's license for allegedly violating the implied consent law still comports with due process, as this court said it did in *Heddan v. Dirkswager,* 336 N.W.2d 54 (Minn.1983), now that prompt hardship relief from immediate revocation is not available.

As we indicated at the outset, the legislature has amended Minn.Stat. § 171.30, subd. 2(a), so that the so-called "limited" or hardship license is no longer available immediately. For a driver without any prior revocation for violating section 169.121 or section 169.123, a limited license "shall not be issued for a period of 15 days"; for one with a prior revocation who has submitted to testing and failed, the period is 90 days; for one with a prior revocation who has not submitted to testing, the period is 180 days. Act of May 24, 1993, ch. 347, § 18, 1993 Minn.Laws 2450, 2462–63, *codified at* Minn.Stat. § 171.30, subd. 2a (Supp.1993).

A driver whose license has been immediately revoked may request in writing a review by the commissioner and the commissioner must report in writing the results of the review within 15 days. Minn.Stat. § 169.123, subd. 5b (1992). The driver has 30 days after the initial immediate revocation in which to petition for judicial review. Minn.Stat. § 169.123, subd. 5c. The judicial hearing shall be held at the earliest practicable date and no later than 60 days after the filing of the petition for review. Minn.Stat. § 169.123, subd. 6. A driver who immediately petitions for judicial review therefore might have to wait 60 days before receiving a judicial hearing. Moreover, the trial court has 14 days following the hearing within which to file its order. *Id.*

We have no way of knowing whether in practice the commissioner issues the hardship license at the 15 day point. We also

have no way of knowing whether the commissioner is grudging in issuance of such licenses. We assume, however, that the procedure has not changed since *Heddan* was decided. There this court said:

> A limited license is generally available immediately upon application by a first offender and during the second half of the revocation period for one whose license has been revoked twice within five years. The licenses are generally limited to use for employment or alcohol rehabilitation purposes.

336 N.W.2d at 60. Presumably, a limited or hardship license is now generally available immediately at the 15 day point upon application by one without a prior revocation and at the 90 and 180 day points otherwise. Those who cannot establish hardship must, of course, wait for a judicial hearing and decision.

In *Heddan* we followed the analysis used in *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), which upheld the Massachusetts prehearing revocation law. In applying this balancing test, we placed appropriate emphasis on the fact that the implied consent law reasonably provided for hardship relief. *Heddan*, 336 N.W.2d at 60. The real question therefore is whether the elimination of the availability of immediate hardship relief for first offenders should change the result.

As Justice Stewart said in his dissent in *Montrym*, a court cannot undo an erroneous revocation. 443 U.S. at 21, 99 S.Ct. at 2622 (Stewart, J., dissenting). Full retroactive relief cannot be provided by a court. *Id.* Moreover, "[e]ven a day's loss of a driver's license can inflict grave injury upon a person who depends upon an automobile for continued employment in his job." *Id.* at 30, 99 S.Ct. at 2627. We do not doubt that there are people who lose their jobs if they are deprived of the use of their automobiles for 15 days. While one may not be troubled by the denial of immediate hardship relief in those cases where the licenses turn out to have been properly revoked, we are talking here about *prehearing* revocation in the case of those whose licenses should not have been revoked.

Although we are troubled by the lack of immediate hardship relief for first offenders, we are not prepared at this time to conclude that the legislation in question violates either federal or state due process guarantees.

### III.

 Finally, appellant drivers urge us to hold that the implied consent hearing is a critical stage in a *de facto* criminal proceeding and therefore due process rights associated with a criminal trial should apply, including the right to a jury trial, the presumption of innocence, and proof beyond a reasonable doubt. We conclude that the court of appeals properly rejected this argument.

Affirmed.