Anthony Eli LAMUSGA, Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No.   C6–95–654.

Court of Appeals of Minnesota.

Sept. 5, 1995.

Review Denied Oct. 27, 1995.

John C. Brink, Daniel L. Gerdts, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by NORTON, P.J., and HUSPENI and KLAPHAKE, JJ.

## OPINION

HUSPENI, Judge.

The Commissioner of Public Safety denied and cancelled appellant Anthony Eli Lamusga's driver's license after receiving a report that he had violated the license condition of total abstinence from alcohol. The trial court denied Lamusga's petition for reinstatement and he appeals. Because we conclude that the denial and cancellation of Lamusga's license did not violate procedural or substantive due process, or exceed statutory authority, we affirm.

## FACTS

After appellant was involved in four alcohol-related driving incidents from 1976 to 1986, the Commissioner of Public Safety (Commissioner) cancelled and denied his driver's license as "inimical to public safety" in October 1986. After appellant met rehabilitation requirements in December 1988, his driver's license was reinstated on the condition that he totally abstain from alcohol and controlled substances. He signed a statement acknowledging he understood his driver's license would be again cancelled and denied

> if the Commissioner has sufficient cause to believe that [he had] consumed alcohol or a controlled substance, regardless if a motor vehicle was involved * * *.

Appellant's driver's license also indicated it was valid only when accompanied by a "B card," which stated "any use of alcohol or drugs invalidates license."

After midnight on May 22, 1993, an officer stopped appellant, who was walking in the street, and observed that he appeared to be very intoxicated. The officer gave appellant a preliminary breath test, which registered a "fail" reading. He submitted a report of his observations to the Commissioner. The Commissioner received the report on May 28, 1993, and cancelled and denied appellant's driving privileges effective June 7, 1993, based upon sufficient cause to believe appellant had violated the abstinence restriction.

On August 15, 1994, appellant petitioned for reinstatement of his driver's license. He now appeals the trial court's denial of reinstatement.

## ISSUES

1. Does the prehearing license cancellation and denial violate procedural due process?

2. Was the Commissioner's decision to cancel and deny appellant's driver's license for consumption of alcohol a violation of substantive due process, in excess of statutory authority or without substantial evidence even without driving conduct?

## ANALYSIS

■ 1. Appellant argues that his procedural due process rights were violated because the June 7, 1993, license cancellation occurred before a hearing in which he could challenge the Commissioner's action. We disagree. It is undisputed that a license to drive is an important property interest, entitling the licensee to a hearing before final deprivation. *Heddan v. Dirkswager,* 336 N.W.2d 54, 58–59 (Minn.1983). The amount of due process required, however, depends

on an analysis of the particular situation. *Id.* at 59.

■ The supreme court has set out the analysis to be used when addressing a procedural due process challenge. *Davis v. Commissioner of Pub. Safety,* 517 N.W.2d 901, 905 (Minn.1994) (upholding prehearing license revocation under implied consent law); *Heddan,* 336 N.W.2d at 58–63 (same). In determining the appropriate timing for the legal process which is due in a challenge to a prehearing implied consent license revocation, the United States Supreme Court employed a balancing test. *Mackey v. Montrym,* 443 U.S. 1, 11, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979). Our supreme court has summarized these factors:

(1) the nature and weight of the private interest affected by the official action challenged; (2) the likelihood of erroneous deprivation of the private interest involved as a consequence of the procedures used; and (3) the state interests served by the summary procedures used, as well as the administrative and fiscal burdens that would result from substitute procedures sought.

*Heddan,* 336 N.W.2d at 59–60. We apply this test to assess the constitutionality of appellant's prehearing license cancellation.

### A. The Private Interest

The first step is to identify the private interest at stake.[1] *Montrym,* 443 U.S. at 11, 99 S.Ct. at 2617. As in *Montrym,* "the driver's interest is in continued possession and use of his license pending the outcome of the hearing due him." *Id.* This interest may be a substantial one, since the driver cannot be made whole for the inconvenience and economic hardship suffered as the result of an

---

1. The precise interest involved here can be distinguished from that at issue in an implied consent revocation. In the latter, the driver consents to being subject to the law merely by driving, operating, or being in physical control of a motor vehicle. Minn.Stat. § 169.123, subd. 2(a) (1994). If the statutory preconditions are met, and if the driver refuses or fails the alcohol concentration test, the prehearing license revocation will occur. Minn.Stat. § 169.123, subds. 2(a), 4. In contrast, appellant's license had been earlier cancelled and denied, and was reinstated in 1988 only after he signed a form explicitly

acknowledging that the Commissioner would cancel his license upon sufficient cause to believe he had consumed alcohol, regardless of whether he was driving. The "B card" accompanying his license also advised that any use of alcohol or drugs invalidates the license. Appellant was thus on specific notice that any consumption of alcohol would invalidate his license. While appellant challenged the extent of his understanding of these conditions before the trial court, he does not assert this theory as a basis for reversing the trial court on appeal.

erroneous suspension. *Id.; Heddan,* 336 N.W.2d at 60.

There are three factors used in assessing the nature of the private interest: (1) the duration of the revocation; (2) the availability of hardship relief; and (3) the availability of prompt postrevocation review. *Montrym,* 443 U.S. at 11–12, 99 S.Ct. at 2617–18, *cited in Heddan,* 336 N.W.2d at 60.

Appellant's driver's license will not be reinstated until he can demonstrate "rehabilitation," which, under his circumstances, requires a minimum of three years of verified abstinence. *See* Minn.R. 7503.1700, subpt. 5(B). We agree with appellant that this is a longer period of withdrawal than in other cases. *Montrym,* 443 U.S. at 12, 99 S.Ct. at 2618 (90 days); *Davis,* 517 N.W.2d at 902 (one year for test refusal and at least 90 days for test failure); *Heddan,* 336 N.W.2d at 60 (six months for test refusals and 90 days for test failures). We recognize, also, that in the case of license cancellation and denial, no hardship relief is available. Minn.Stat. § 171.04, subd. 1(11) (1994); Minn.R. 7503.1800, subpt. 2.

In *Davis,* 517 N.W.2d at 904–05, the court upheld the prehearing license revocation under the implied consent law despite the fact that prompt hardship license was not immediately available. The court in *Davis* was troubled by the lack of immediate hardship relief even for first time offenders, who were required to wait 15 days before becoming eligible for a limited license, because of the hardship it could impose upon those whose licenses were erroneously revoked. Nonetheless, it was unwilling to hold that this violated state or federal due process guarantees. *Id.* at 905. While we share the concerns voiced by the *Davis* court, we conclude that the sound rationale of that case extends to the facts before us. Therefore, we find no violation of state or federal due process based upon the lack of hardship relief.

We note also that pursuant to the mandate of Minn.Stat. § 171.19 (1994) a petition for reinstatement shall be set on for hearing upon 15 days' notice. This statutory timeline is as fast or faster than that provided for hearings under Minn.Stat. § 169.123, subds. 5c, 6 (1994) (hearing held at earliest practical date and no later than 60 days following filing of the petition for review; if hearing not conducted within 60 days, balance of revocation may be stayed).

Appellant also argues that in practice there is a lengthy delay in scheduling the hearing under section 171.19 and that, as a further complication, it is difficult for him to meet the burden of proving he was not consuming alcohol. *See McIntee v. State, Dep't of Pub. Safety,* 279 N.W.2d 817, 821 (Minn. 1979). These arguments do not persuade us to reach a result different from that in *Davis.* As the trial court observed, despite the length of cancellation and lack of hardship relief, appellant waited a full year before requesting review of the cancellation and denial of his license. Further, appellant was given specific notice as a condition of the reinstatement of his license in 1988 that mere consumption of alcohol would result in cancellation. We, therefore, find no merit in appellant's argument regarding the length of time involved between request for and date of a hearing, or in his argument that he carries an unfair burden of proof.

### B. *Likelihood of Erroneous Deprivation*

The second factor to consider in testing the constitutionality of prehearing deprivation of a license is the likelihood of an erroneous deprivation of the private interest involved. *Montrym,* 443 U.S. at 13, 99 S.Ct. at 2618. There must be

> a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be.

*Id.*

The rules authorize the Commissioner to cancel and deny the driver's license of one whose license was reinstated after completion of rehabilitation upon "sufficient cause" to believe the person has consumed alcohol. Minn.R. 7503.1300, subpt. 3; *see* Minn.R. 7503.0100, subpt. 11 (definition of sufficient cause). Appellant argues that the risk of erroneous deprivation is high, because there is no assurance as to the accuracy or reliability of the information upon which the cancellation is based. We cannot agree.

In *Montrym*, 443 U.S. at 14, 99 S.Ct. at 2619, the Supreme Court found the risk of erroneous deprivation was insubstantial when the revocation was based upon an officer's report of fact, including a probable cause determination and the driver's refusal to take a test. In *Heddan*, 336 N.W.2d at 61–62, our supreme court held that while the risk of erroneous deprivation was increased when the revocation was based upon failure of a chemical test, the increase was not sufficient to alter the balance struck in *Montrym*.

When prompt postdeprivation relief is available, and the predeprivation procedure provides a reasonably reliable basis for concluding the facts justifying the official action are as a responsible official warrants them to be, a predeprivation evidentiary hearing is not required. *Heddan*, 336 N.W.2d at 61 (quoting *Montrym*, 443 U.S. at 13, 99 S.Ct. at 2618). Here, prompt postdeprivation relief was available, although appellant did not immediately take advantage of it. Further, the rules provide a reasonably reliable basis upon which to document a record of consumption of alcohol in violation of the conditions of a license.[2] While appellant attempts to create scenarios that could lead to unreliable reporting under the rules, in this case the officer reported his observations of signs of intoxication, and appellant acknowledged consuming alcohol a number of times since his rehabilitation, including consumption of alcohol on the night in question.

### C. *Public Interest Served by Prehearing Revocation*

The final factor to consider in testing the constitutionality of prehearing cancellation of a license is the public interest served by the cancellation. *Heddan*, 336 N.W.2d at 62–63. This includes public safety interests, as well as administrative and fiscal burdens that would result from substitute procedures sought. *Montrym*, 443 U.S. at 17, 99 S.Ct. at 2620.

Appellant argues that the public interest is not implicated here because no unsafe driving occurred. He also contends that the additional public interest in avoiding undue physical and administrative burdens does not arise because no testing procedures are implicated and drivers typically do not know their licenses are to be cancelled until after they receive the cancellation notice.

The primary concern in a case such as this is public safety. This court has recognized that the very strict implied consent laws were enacted in response to the "trail of broken lives, bodies, and property left by drunk drivers." *Szczech v. Commissioner of Pub. Safety*, 343 N.W.2d 305, 306 (Minn.App. 1984). Likewise, strict laws and rules address the more serious problem of those who continue to drink after rehabilitation. Appellant is a repeat offender who demonstrated in the past he was unable to control his drinking and driving. This court has already held that the abstinence requirement is aimed at limiting the licensing of dangerous drivers and protecting public safety. *See Magoon v. Commissioner of Pub. Safety*, 494 N.W.2d 922, 924 (Minn.App.1993); *Askildson v. Commissioner of Pub. Safety*, 403 N.W.2d 674, 677 (Minn.App.1987), *review denied* (Minn. May 28, 1987). Allowing a driver to retain the license pending a hearing would provide additional opportunities for the driver who already demonstrated an inability to comply with the abstinence requirement to offend once again. Summary removal of the driver's license in these circumstances comports with public safety considerations. *Heddan*, 336 N.W.2d at 62–63.

After balancing all of the factors involved in testing the constitutionality of prehearing cancellation and denial of a license, we conclude that such cancellation and denial does not violate procedural due process.

2. Appellant next challenges the requirement of total abstinence, and posits several

**2.** "Sufficient cause to believe" is defined as "grounds put forth in good faith which are not arbitrary, irrational, unreasonable, or irrelevant and which make the proposition asserted more likely than not * * *." Minn.R. 7503.0100, subpt. 11. They must be based on at least one of the following sources: written information from an identified person; facts or statements supplied by the applicant or driver; driver license and accident records; court documents and police records; facts of which the commissioner or the commissioner's employees have personal knowledge. *Id.*

theories related to the fact that he did not drive after consuming alcohol. He contends that the abstinence condition violates substantive due process because it is not rationally related to removing inebriated drivers from the streets, that the enabling statutes do not authorize the Commissioner to impose an abstinence requirement, and that there was no good cause to believe he was inimical to public safety merely because he consumed alcohol without driving a motor vehicle. We cannot agree with appellant.

A rule violates substantive due process if not rationally related to legislative objectives. *In re Lawful Gambling License of Thief River Falls Amateur Hockey Ass'n,* 515 N.W.2d 604, 606 (Minn.App.1994). This court has already stated that the Commissioner partially discharges his duty to minimize the risk to the public posed by drunken motorists by requiring a period of abstinence and sobriety, so that the offenders may understand and accept their condition. *Mechtel v. Commissioner of Pub. Safety,* 373 N.W.2d 832, 835 (Minn.App.1985). Further, this court has held that the Commissioner is within his discretion in requiring abstinence, even apart from operating a motor vehicle, as a condition of a license. *Askildson,* 403 N.W.2d at 677. The rationale of *Askildson* applies with full force to this case and controls our decision. The total abstinence requirement for individuals with multiple alcohol traffic violations aids in preventing recurring violations and is rationally related to the legislative objective of limiting the licensing of dangerous drivers.

Appellant also claims that the Commissioner was without statutory authority to promulgate Minn.R. 7503.1300, subpt. 3, and 7503.1700, subpts. 4 and 6, requiring abstinence from alcohol as a condition for obtaining a license after rehabilitation and authorizing the Commissioner to cancel and deny the license upon sufficient cause to believe the condition has been violated. We find no merit in appellant's claim. In *Askildson,* this court answered the statutory challenge and upheld the Commissioner's authority to cancel and deny a license for nondriving-related consumption of alcohol after rehabilitation as

inimical to public safety. *Askildson,* 403 N.W.2d at 677.

Finally, appellant contends the determination that he is inimical to public safety is not supported by substantial evidence, because his alcohol consumption was not connected to driving. This court rejected a similar argument in *Askildson,* 403 N.W.2d at 677–78. As we stated in that case, appellant's license was conditioned on abstention from alcohol, and violation of that condition was grounds for cancellation and denial.

## DECISION
The trial court decision denying appellant's petition for reinstatement is affirmed.

**Affirmed.**