Paul D. HAMILTON, Petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C3–98–1114.

Supreme Court of Minnesota.

Oct. 21, 1999.

Faison T. Sessoms, Minneapolis, for appellant.

Mike Hatch, Attorney General, Jeffrey F. Lebowski and Michael R. Pahl, Assistant Attorneys General, St. Paul, for respondent.

## OPINION

PAGE, Justice.

On February 4, 1998, appellant Paul Hamilton was arrested for driving while under the influence of alcohol. At the time, Hamilton's alcohol concentration was .23. As a result of his arrest, the Commissioner of Public Safety revoked Hamilton's driver's license.[1] Had Hamilton's alcohol concentration been between .10 and .19, he would have been required to wait 15 days before he could be issued a limited license. *See* Minn.Stat. § 171.30, subd. 2a(1–3) (1998).[2] But because his alcohol concentration was above .20, Hamilton was required to wait 30 days before he could be issued a limited license. *See* Minn.Stat. § 171.30, subd. 2c (1998).[3] Hamilton sought judicial review of his license revocation, claiming that section 171.30, subd. 2c violated his right to procedural due process by doubling the waiting period for a limited driver's license for first-time offenders with an alcohol concentration of .20 or above. The district court agreed with Hamilton and rescinded Hamilton's license revocation. The court of appeals reversed, holding that "[t]he temporary license and the availability of immediate administrative review provide adequate due process protections for the prehearing license revocation of a driver whose alcohol concentration is alleged to be .20 or more and who is subject to a 30–day waiting period for a limited license." *Hamilton v. Commissioner of Pub. Safety*, 587 N.W.2d 845, 849 (Minn.App.1999). We affirm based on our conclusion that Minn.Stat.

---

1. Under Minn.Stat. § 169.123, subd. 4(e) (1998), the Commissioner of Public Safety is required to revoke the license of a driver who is arrested for driving with an alcohol concentration of 0.10 or above.

2. Minn.Stat. § 171.30, subd. 2a provides:

   Subd. 2a. Notwithstanding subdivision 2, a limited license shall not be issued for a period of:
   (1) 15 days, to a person whose license or privilege has been revoked or suspended for a violation of section 169.121, 169.123, or a statute or ordinance from another state in conformity with either of those sections;
   (2) 90 days, to a person who submitted to testing under section 169.123 if the person's license or privilege has been revoked or suspended for a second or subsequent violation of section 169.121, 169.123, or a statute or ordinance from another state in conformity with either of those sections;
   (3) 180 days, to a person who refused testing under section 169.123 if the person's license or privilege has been revoked or suspended for a second or subsequent violation of section 169.121, 169.123, or a statute or ordinance from another state in conformity with either of those sections; * * * *.

3. Minn.Stat. § 171.30, subd. 2c provides:

   If a person's license or privilege has been revoked or suspended for a violation of section 169.121 or 169.123, or a statute or ordinance from another state in conformity with either of those sections, and the person's alcohol concentration was 0.20 or greater at the time of the violation, a limited license may not be issued for a period of time equal to twice the time period specified in subdivision 2a or 2b.

§ 171.30, subd. 2c does not violate procedural due process.

The facts of this case are undisputed. Before February 4, 1998, Hamilton had no alcohol-related driving offenses. On February 4th, a breath test administered after a traffic stop revealed that Hamilton had a .23 alcohol concentration. As a result, Hamilton was arrested for driving while under the influence of alcohol and immediately given a Notice and Order of Revocation, revoking his driver's license for 180 days. *See* Minn.Stat. § 169.123, subd. 4(e)(4) (1998).[4] As part of the Notice and Order of Revocation, Hamilton received a seven-day temporary driver's license. After Hamilton's seven-day temporary driver's license expired, he was permitted, after a mandatory 30–day waiting period, to apply for a limited driver's license. *See* Minn.Stat. § 171.30, subd. 2c.

■■■ The only issue presented by this appeal is whether Minn.Stat. § 171.30, subd. 2c's mandatory 30–day waiting period for a limited license violates procedural due process. Evaluating a statute's constitutionality is a question of law. *See In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). Questions of law are subject to de novo review; therefore, the reviewing court is not bound by the lower court's decision. *See id.* (quoting *Sherek v. Independent Sch. Dist. No. 699*, 449 N.W.2d 434, 436 (Minn.1990)). Minnesota statutes are presumed constitutional and, as we have said in the past, our power to declare a statute unconstitutional must be exercised with extreme caution and only when absolutely necessary. *See In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (citing *City of Richfield v. Local No. 1215*, 276 N.W.2d 42, 45 (Minn.1979)). The party challenging a statute has the burden of demonstrating, beyond a reasonable doubt, that a constitutional violation has occurred. *See id.*

This case arises from a 1997 amendment to section 171.30 that added subdivision 2c, which mandates a 30–day waiting period before a driver, whose license has been revoked because the driver had an alcohol concentration of .20 or above, can apply for a limited license. *See* Act of June 30, 1997, ch. 2, § 56, 1997 Minn. Laws 1st Sp. 3183. This amendment did not change or alter in any way the driver's right to administrative review, judicial review, or any of the other procedures we upheld as constitutional in *Heddan v. Dirkswager*, 336 N.W.2d 54 (Minn.1983), and *Davis v. Commissioner of Pub. Safety*, 517 N.W.2d 901 (Minn.1994). *See* Minn.Stat. § 169.123, subds. 5b, 5c, and 6 (1998).[5]

In *Heddan*, we upheld Minnesota's driver's license revocation statute against a due process challenge. *See Heddan*, 336 N.W.2d at 55 (evaluating Minn.Stat. § 169.123 (1982)). Heddan had his driv-

---

4. Minn.Stat. § 169.123, subd. 4(e) provides:

> Upon certification by the peace officer that there existed probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle in violation of section 169.121 and that the person submitted to a test and the test results indicate an alcohol concentration of 0.10 or more * * *, then the commissioner of public safety shall revoke the person's license or permit to drive, or nonresident operating privilege:
> (1) for a period of 90 days; or
> (2) if the person is under the age of 21 years, for a period of six months; or
> (3) for a person with a prior impaired driving conviction or prior license revocation

within the past five years, for a period of 180 days; or
*(4) if the test results indicate an alcohol concentration of 0.20 or more, for twice the applicable period in clauses (1) to (3).*
(emphasis added).

5. At any time during the period of revocation, a driver may make a written request to the Commissioner of Public Safety for administrative review of the revocation. *See* Minn.Stat. § 169.123, subd. 5b (1998). A driver may also petition the court for judicial review of a license revocation, but must do so within 30 days of the receipt of the Notice and Order of Revocation. *See* Minn.Stat. § 169.123, subd. 5c (1998). A hearing must be held within 60 days of the filing of the petition for review. *See* Minn.Stat. § 169.123, subd. 6 (1998).

er's license revoked after failing a breath test. *See id.* As required by section 169.123, Heddan received a Notice and Order of Revocation, which included a seven-day temporary license. *See id.* After the seven-day license expired, Heddan was immediately eligible to apply for a limited driver's license. *See id.* He was also eligible to seek administrative and judicial review of his license revocation. *See id.* Heddan applied for and received a limited license. *See id.* In addition, he sought both administrative and judicial review, claiming that the immediate prehearing driver's license revocation violated procedural due process. *See id.*

█ Heddan raised the same claim in this court. Our analysis of Heddan's claim relied on the three factor balancing test set out by the United States Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976),[6] as applied to driver's licenses in *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). *Montrym* involved a due process challenge to the Massachusetts prehearing implied consent driver's license revocation procedures. *See Montrym,* 443 U.S. at 3–4, 99 S.Ct. 2612 (reviewing Mass. Gen. Laws Ann., ch. 90, § 24(1)(f) (West Supp.1979)). The court in *Montrym* concluded that the procedures did not violate due process. *See id.* at 19, 99 S.Ct. 2612. Noting that the Minnesota prehearing driver's license revocation system was not significantly different from the Massachusetts system[7] upheld in *Montrym,* the *Heddan* court concluded that the Minnesota system did not violate procedural due process. *See Heddan,* 336 N.W.2d at 63.

In 1992, the Minnesota legislature amended Minn.Stat. § 171.30, subd. 2a by adding a mandatory 15–day waiting period before a first-time offender could apply for a limited license. *See* Act of Apr. 29, 1992, ch. 570, art. 1, § 23, 1992 Minn. Laws.1961. In amending Minn.Stat. § 171.30, subd. 2a, the legislature did not alter any of the other procedures we upheld as constitutional in *Heddan.* The 15–day waiting period was challenged on due process grounds in *Davis.* We analyzed *Davis* in light of *Montrym* and our decision in *Heddan* and concluded that the mandatory 15–day waiting period required by subdivision 2a did not violate procedural due process.[8] *See Davis,* 517 N.W.2d at 905. Looking at Minn.Stat. § 171.30, subd. 2c in light of our decisions in *Heddan* and *Davis,* we can only conclude that the 30–day mandatory waiting period found in subdivision 2c does not violate procedural due process.

In cases involving a prehearing driver's license revocation, an erroneous revocation cannot be undone and any increase in the waiting period for a limited license causes heightened constitutional concern because of the unjustified injury to the driver's interest. Thus, the impact of the longer waiting period required by subdivision 2c on the driver's interest must be balanced

---

6. First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. 893.

7. One difference between the Minnesota system and the Massachusetts system upheld in *Montrym* is that the Massachusetts system had no provision for a limited license. *See Heddan,* 336 N.W.2d at 60.

8. At the time the legislature amended subdivision 2a by adding the 15–day waiting period for first-time offenders, the legislature also added a waiting period for repeat offenders of 90 days for an offender with a prior revocation and of 180 days for an offender with a prior revocation who refused to submit to testing. *See* Act of Apr. 29, 1992, ch. 570, art. 1, § 23, 1992 Minn. Laws 1961, *codified at* Minn.Stat. § 171.30, subd. 2a(2–3) (1998). Although not directly at issue in *Davis,* we expressed no constitutional concern about the increased waiting period for repeat offenders. *See Davis,* 517 N.W.2d at 904, 905.

against the likelihood that the revocation was erroneous and the state's interest in maintaining public safety by removing impaired drivers from the roads. *See Montrym*, 443 U.S. at 10, 99 S.Ct. 2612 (quoting *Mathews*, 424 U.S. at 335, 96 S.Ct. 893).

We have, in the past, held that the risk of an erroneous revocation under Minnesota's drivers license revocation system is within constitutional limits. *See Heddan*, 336 N.W.2d at 62. The longer waiting period required by subdivision 2c does not in any way increase or otherwise alter that risk. We have already determined that breathalyzer tests are a reliable method of testing blood alcohol content. *See State v. Quinn*, 289 Minn. 184, 187, 182 N.W.2d 843, 845 (1971). In addition, we have held that there is very little risk of an officer intentionally falsifying a driver's refusal to take a breath test. *See Heddan*, 336 N.W.2d at 61 (quoting *Montrym*, 443 U.S. at 14, 99 S.Ct. 2612). Because the longer waiting period required by Minn.Stat. § 171.30, subd. 2c does not create a greater risk of an erroneous revocation, this factor lends no support to Hamilton's constitutional claim. Further, we are not persuaded that the impact of the longer waiting period on Hamilton's interest in retaining his right to drive is strong enough to overcome the state's public safety interest in removing from the roads impaired drivers whose alcohol concentration was .20 or above. Therefore, we conclude that Minn.Stat. § 171.30, subd. 2c's mandatory 30–day waiting period before Hamilton could apply for a limited license does not violate due process.

We acknowledge that in upholding the statute in *Heddan*, we emphasized the importance of the immediate availability of a limited license. *See Heddan*, 336 N.W.2d at 60. We also acknowledge that in *Davis*, we indicated that we were "troubled by the lack of immediate hardship relief." *Davis*, 517 N.W.2d at 905. Our constitutional concerns are tempered, however, by the Supreme Court's decision in *Montrym*,

which upheld as constitutional the Massachusetts' prehearing driver's license revocation system even though it involved a statutory scheme that made no provision for a limited license. *See Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321.

Affirmed.