**STATE of Minnesota, Respondent,**

v.

**Daniel Joseph MELDE, Appellant.**

and

**State of Minnesota, Respondent,**

v.

**Alan J. Myers, Appellant.**

**Nos. A05–1553, A05–1604.**

Supreme Court of Minnesota.

Dec. 21, 2006.

Paul W. Rogosheske, Thuet, Pugh, Rogosheske & Atkins, Ltd., South St. Paul MN, Douglas V. Hazelton, Hazelton Law Offices, Minneapolis MN, for Appellant Daniel Joseph Melde.

Mike Hatch, Attorney General, St. Paul MN, Peter A. MacMillan, Michele R Wallace, MacMillan, Wallace & Athanases, PA, Minneapolis MN, Raymond F. Schmitz, Olmsted County Attorney, David F. McLeod, Assistant County Attorney, Rochester MN, for Respondent State of Minnesota.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

In these two cases, consolidated for review, the question is whether the Minnesota Implied Consent Advisory, Minn.Stat. § 169A.51, subd. 2 (2004), violates a driving-while-impaired (DWI) arrestee's procedural due process rights because it fails to adequately notify the arrestee of the consequences of refusing to submit to chemical testing. The district courts concluded that the advisory violated appellants' due process rights and dismissed the test-refusal charges. On appeal, the court of appeals reversed the dismissals of the test-refusal charges and remanded the cases for trial. Concluding that the advisory violates neither federal nor state procedural due process guarantees, we affirm.

### State v. Melde

In the early morning hours of November 14, 2004, appellant Daniel Joseph Melde was arrested in Hennepin County on probable cause for driving while impaired. He was a repeat DWI offender. Melde was transported to the Crystal Police Department where the arresting officer read to Melde the implied consent advisory that contained the standard warning that refusal to take a test is a crime, and Melde understood it. He was given the opportunity and sufficient time to contact an attorney. He contacted his high school hockey coach because he did not have the "wherewithal" to retain an attorney; but due to the time of day, the coach could not find an attorney and advised Melde to refuse testing. Melde refused testing. He was subsequently charged by complaint in Hennepin County District Court with gross-misdemeanor second-degree DWI for test-refusal, in violation of Minn.Stat. § 169A.20, subd. 2 (2004), and Minn.Stat. § 169A.25 (2004), and with gross-misdemeanor third-degree DWI for driving while impaired, in violation of Minn.Stat. § 169A.20, subd. 1(1) (2004), and Minn.Stat. § 169A.26 (2004). The district court granted Melde's motion to dismiss the gross-misdemeanor test-refusal charge, concluding that "by failing to advise arrestees of the enhanced criminality and penalties that result from refusal," the implied consent advisory "violates the due process requirements of both the United States and Minnesota State Constitutions."

### State v. Myers

On December 4, 2004, at approximately 2:09 a.m., a state trooper stopped to investigate a vehicle stopped on the shoulder of Highway 52 just north of Oronoco in Olmsted County. The trooper identified the driver as appellant Alan J. Myers, and after determining that there was probable cause for an arrest, the trooper arrested Myers for DWI. The trooper transported Myers to the Zumbrota Police Department where, at approximately 2:45 a.m., he read to Myers the standard implied consent advisory. Myers requested the opportunity to speak with an attorney and was provided access to a telephone and a telephone book. After several unsuccessful attempts

to contact an attorney, for a period lasting upwards of 50 minutes, several readings by the trooper of the implied consent advisory, and a lengthy question-and-answer discussion about the advisory, Myers insisted upon consulting with an attorney before testing, and the trooper determined that Myers refused to submit to testing.

Myers was charged by complaint in Olmsted County District Court with gross-misdemeanor third-degree DWI for test-refusal, in violation of Minn.Stat. § 169A.20, subd. 2, and Minn.Stat. § 169A.26, and with misdemeanor fourth-degree DWI for driving while impaired, in violation of Minn.Stat. § 169A.20, subd. 1(1), and Minn.Stat. § 169A.27 (2004). The district court granted Myers' motion to dismiss the test-refusal charge, concluding that the implied consent advisory violated his due process rights because it did not inform Myers that a test refusal is a gross misdemeanor that may result in harsher penalties than a test failure.

■ On the state's pretrial critical-impact appeals of the district courts' orders in each case,[1] the court of appeals reversed and remanded, concluding in both cases that the failure to inform a DWI arrestee that test-refusal is a gross misdemeanor that may result in harsher penalties than a test-failure does not violate due process. *State v. Myers,* 711 N.W.2d 113, 119 (Minn.App.2006); *State v. Melde,* No. A05–1553, 2006 WL 619099, at *2 (Minn.App. Mar.14, 2006). We granted appellants' petitions for further review in each case and consolidated the appeals. Appellants contend that the implied consent advisory violates procedural due process under the federal and state constitutions because it

does not adequately inform the DWI arrestee of the consequences of a refusal to submit to chemical testing.

## I.

■ The Due Process Clause of the United States Constitution provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. The Minnesota Constitution also provides that "[n]o person shall be * * * deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7. Essential to the guarantee of due process is fundamental fairness. *See Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (relying on fundamental fairness principles in holding that the Due Process Clause forbids the use of a defendant's silence after *Miranda* warnings for impeachment at trial).

■ We review the constitutionality of a statute de novo. *State v. Benniefield,* 678 N.W.2d 42, 45 (Minn.2004). Minnesota statutes are presumed constitutional. *State v. Barker,* 705 N.W.2d 768, 771 (Minn.2005). We will declare a statute unconstitutional "only when absolutely necessary." *State v. Behl,* 564 N.W.2d 560, 566 (Minn.1997).

Minnesota's implied consent law declares that any person operating or in physical control of a motor vehicle within this state or on any boundary water is deemed to have consented to a chemical test to determine the presence of alcohol,

---

**1.** As a general rule, an appellate court will not reverse the determination of the district court unless " 'the state demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the

error will have a critical impact on the outcome of the trial.' " *State v. Edrozo,* 578 N.W.2d 719, 722 (Minn.1998) (quoting *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977)).

controlled substances, or hazardous substances if arrested for driving while impaired. Minn.Stat. § 169A.51, subd. 1(b)(1) (2004).[2] At the time a chemical test is administered, the arrestee must be advised of the following: (1) that Minnesota law requires testing to determine if the arrestee is under the influence of alcohol, controlled substances, or hazardous substances; (2) that refusal to take a test is a crime; (3) that a test will be compelled if the officer has probable cause to believe the arrestee has violated the criminal vehicular homicide and injury laws; and (4) that the arrestee has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test. Minn.Stat. § 169A.51, subd. 2.[3]

## II.

■ Under the federal constitution, due process does not permit the government to mislead individuals as to either their legal obligations or the penalties they might face should they fail to satisfy those obligations. *Raley v. Ohio*, 360 U.S. 423, 437–39, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959) (holding that due process did not permit

the prosecution of individuals who refused to testify before a legislative commission after being led to believe, albeit erroneously, by commission members that they would be protected by the privilege against compelled self-incrimination). In reliance in part on *Raley*, we concluded that a misleading implied consent advisory violates federal due process. *McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 853–55 (Minn.1991) (holding unconstitutional a portion of the implied consent advisory as applied to an individual misled by the advisory).

As a corollary, an implied consent advisory that contains no misleading assurances would not violate federal due process. In South *Dakota v. Neville*, police officers asked a driver arrested on probable cause for DWI to submit to chemical testing and warned him that he could lose his license if he refused. 459 U.S. 553, 555, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). The driver refused. *Id.* at 555–56, 103 S.Ct. 916. South Dakota law specifically provided that evidence of test-refusal was admissible at trial. *Id.* at 556, 103 S.Ct. 916. Nevertheless, the driver sought to

---

**2.** Minnesota Statutes § 169A.51, subd. 1(a), provides:

Any person who drives, operates, or is in physical control of a motor vehicle within this state or on any boundary water of this state consents, subject to the provisions of sections 169A.50 to 169A.53 (implied consent law), and section 169A.20 (driving while impaired), to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol, controlled substances, or hazardous substances. The test must be administered at the direction of a peace officer.

**3.** Minnesota Statutes § 169A.51, subd. 2, provides:

At the time a test is requested, the person must be informed:

(1) that Minnesota law requires the person to take a test:

(i) to determine if the person is under the influence of alcohol, controlled substances, or hazardous substances;

(ii) to determine the presence of a controlled substance listed in schedule I or II, other than marijuana or tetrahydrocannabinols; and

(iii) if the motor vehicle was a commercial motor vehicle, to determine the presence of alcohol;

(2) that refusal to take a test is a crime;

(3) if the peace officer has probable cause to believe the person has violated the criminal vehicular homicide and injury laws, that a test will be taken with or without the person's consent; and

(4) that the person has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test.

suppress evidence of the test-refusal. *Id.* The suppression motion was granted for several reasons, including the officers' failure to advise that test-refusal could be used at trial. *Id.*

On certiorari review, the United States Supreme Court held, inter alia, that admission of evidence of test-refusal in a DWI prosecution did not violate federal due process even though the driver had not been warned that his test-refusal could be used against him at trial. *Id.* at 566, 103 S.Ct. 916. The Court noted that unlike *Miranda* warnings, which are of constitutional dimension, any right to refuse testing was a "matter of grace bestowed" by the legislature. *Id.* at 565–66, 103 S.Ct. 916. The Court acknowledged that the officers did not inform the driver that a test-refusal could be used against him at trial, but thought it "unrealistic to say that the warnings given here implicitly assure a suspect that no consequences other than those mentioned will occur." *Id.* at 566, 103 S.Ct. 916. The Court further noted, "[i]mportantly, the warning that he could lose his driver's license made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." [4] *Id.*

■ Minnesota's implied consent advisory, like the South Dakota advisory in *Neville,* contains no implicit misleading assurances of the relative consequences of a test-refusal, instead notifying the arrestee that refusal to submit to testing is a crime. This warning makes it clear that a test-refusal is not a "safe harbor." In view of *Neville,* we conclude that the lack of more specific warnings as to the consequences of a test-refusal does not violate federal due process, particularly given that Minnesota drivers have a limited right to counsel before testing.

## III.

In reliance on *Davis v. Commissioner of Public Safety,* 517 N.W.2d 901 (Minn. 1994), appellants also contend that Minnesota's implied consent advisory violates due process under the state constitution. We have construed the Minnesota Constitution as affording greater protection than its federal counterpart, although we do not do so cavalierly.[5] *State v. Carter,* 697 N.W.2d 199, 210 (2005).

In *Davis,* we addressed the adequacy of the implied consent advisory as amended in response to *Friedman v. Commissioner of Public Safety,* 473 N.W.2d 828 (1991). 517 N.W.2d at 902. *Friedman* held that under the Minnesota Constitution, DWI arrestees have a limited right to a reasonable amount of time in which to attempt to consult with counsel before complying with implied consent testing or refusing to do so. 473 N.W.2d at 837. In *Davis,* we

---

4. The Supreme Court has also held that state-compelled blood testing does not violate the right against self-incrimination, the right to due process, the right to counsel, or the prohibition against unreasonable searches and seizures. *Schmerber v. California,* 384 U.S. 757, 759, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). But due process concerns could be implicated should the police initiate physical violence, refuse reasonable requests for a different form of testing, or respond to resistance with inappropriate force. *Id.* at 760, n. 4, 86 S.Ct. 1826

5. We have previously noted the various principled bases articulated for construing state

constitutions as affording broader protection, including:

variations in text, constitutional history, early state precedent construing the applicable provision of the state constitution, relatedness of the subject matter to state-level enforcement, presence of issues that are unique to the state, and a determination that a more expansive reading of the state constitution represents the better rule of law.

*State v. Harris,* 590 N.W.2d 90, 97–98 (Minn. 1999).

noted that before *Friedman,* the advisory informed DWI arrestees that (a) Minnesota law requires that the person take a test to determine if the person is under the influence of alcohol or a controlled substance; (b) if testing is refused, the person's driver's license will be revoked for a minimum of one year; (c) if the test is taken and the results indicate an alcohol concentration of .10 or more, the person's driver's license will be revoked for a minimum of 90 days; (d) whether the test is taken or refused, the person may be subject to criminal penalties for DWI; (e) after testing the person may consult with an attorney; (f) after testing the person has the right to obtain additional tests by someone of the person's own choosing; and (g) the refusal to take a test may be offered in evidence against the person at trial. *Davis,* 517 N.W.2d at 902 (citing Minn.Stat. § 169.123, subds. 2(b)(1)-(4), 2(b)(6)-(7) (Supp.1991)). After *Friedman,* the legislature amended the advisory, eliminating (b), (c), (d), (f), and (g); retaining (a) and (e); and adding that refusal to take a test is a crime. *Id.* (citing Act of May 24, 1993, ch. 347, § 10, 1993 Minn. Laws 2450, 2457–58(codified at Minn.Stat. § 169.123, subd. 2(b) (Supp.1993))).

As a result, the implied consent advisory read to the drivers in *Davis* warned only that "refusal to take a test is a crime," the same language used in the current advisory. The *Davis* court considered, among other things, whether the implied consent advisory violated state due process because drivers were not warned that a test-refusal would result in the revocation of their licenses. *Id.* In considering whether we should construe the Due Process Clause of the state constitution as requiring a more complete implied consent advisory, we noted first that arrestees who consulted with counsel "probably" had no practical basis to complain about the lack of a more detailed advisory, as chemical testing is required by law and attorneys cannot ethically advise an arrestee not to comply with the law. *Id.* We also noted, however, that those who either do not or cannot reach counsel "have a practical basis for arguing that if they had been given a proper advisory they might have taken the test." *Id.* Nevertheless, while expressing concern about the deficiencies of the advisory as amended, we were unwilling at that time to say that the advisory violated procedural due process under the state constitution. *Id.*

Appellants assert that because post-*Davis* legislation has elevated the test-refusal offense to a gross misdemeanor, the time has come for us to hold the advisory constitutionally deficient.[6] However, the concern raised by Davis involved the advisory's lack of *any* warning about a significant consequence for test refusal, namely the loss of driving privileges. In *Davis,* we explained that " '[e]ven a day's loss of a driver's license can inflict grave injury upon a person who depends upon an automobile for continued employment in

---

6. Prior to August 2003, test-refusal and test-failure with no aggravating factors were misdemeanors. Minn.Stat. § 169A.27 (2002). But as of August 1, 2003, test-refusal with no aggravating factors is a gross misdemeanor, while test-failure with no aggravating factors remains a misdemeanor. Act of May 28, 2003, ch. 2, § 5, 2003 Minn. Laws 1st Special Sess. 1384, 1446 (codified at Minn.Stat. §§ 169A.26–27 (2004)). The enhanced penalties for test-refusal appear to correspond to the previously enhanced penalties, to a gross misdemeanor level, for test-failure with an alcohol concentration of .20 or more. Act of May 15, 2000, ch. 478, art. 1, §§ 2 and 9, 2000 Minn. Laws 1484, 1485, 1490 (codified at Minn.Stat. §§ 169A.03, subd. 2, 169A.26, subd. 1 (2004)). Presumably this was done to obviate whatever advantage a DWI arrestee with an alcohol concentration of .20 or more might attain in refusing to comply with testing.

his job.'" 517 N.W.2d at 905 (quoting *Mackey v. Montrym*, 443 U.S. 1, 21, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (Stewart, J., dissenting)). But the failure to warn of the consequences of test-refusal did not violate the federal constitution, and we declined to extend broader coverage under the state constitution. *Id.* Since at least 1991, the advisory has warned that refusal to submit to testing is a crime. *Id.* at 902. Thus, unlike the appellants in *Davis* who complained about a complete lack of warning that license revocation would result from test-refusal, appellants in this case were explicitly warned that test-refusal is a crime.

That the legislature has by operation of law allowed arrestees the "option" of test-refusal does not necessarily implicate the underlying procedural due process concerns normally attendant to the waiver of rights of constitutional dimension, *see Neville*, 459 U.S. at 565–66, 103 S.Ct. 916, and appellants have articulated no principled basis for a more expansive reading of the state constitution.

■ As indicated, the advisory already warns that test-refusal is a crime. To go beyond that to inform an arrestee that the crime is a gross misdemeanor might be appropriate, but it is not an issue of constitutional imperative. It would appear that the advisability of a more detailed implied consent advisory should more appropriately be directed to the legislature for debate and deliberation. We therefore conclude that the lack of a more specific implied consent advisory as to the consequences of a refusal to submit to chemical testing does not violate state due process.

Affirmed.