**STATE of Minnesota, Respondent,**

v.

**Wayne Earl DAHL, Appellant.**

**No. A03–375.**

Court of Appeals of Minnesota.

March 23, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Frederic W. Knaak, Knaak Kantrud, P.A., Fridley City Attorney, Vadnais Heights, MN, for respondent.

Randall D.B. Tigue, Randall Tigue Law Office, P.A., Minneapolis, MN, for appellant.

Considered and decided by
SCHUMACHER, Presiding Judge;
WILLIS, Judge; and WRIGHT, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant Wayne Earl Dahl challenges his conviction of violating Fridley, Minn., City Code § 214.04.6 (2002), which prohibits the use of "motion signs" throughout Fridley.[1] He argues the ordinance is facially unconstitutional under the First Amendment of the United States Constitution. We conclude the ordinance is a valid time, place, or manner regulation under the test set out in *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). We also conclude the evidence was not "insufficient as a matter of law," and because the issue was not properly raised before this court, we decline to address Dahl's argument that the trial court erred in excluding a defense witness. We affirm.

## FACTS

Dahl operates a chiropractic clinic on the corner of Osborne Road and Highway 65 in Fridley. For many years he displayed an alternating "time and temperature" sign on top of a traditional, flat advertising sign at his clinic. Between December 2000 and January 2001, Dahl decided he wanted an automatic changeable sign "so that we could provide public service messages, et cetera."

In early 2001, Dahl applied for, and Fridley granted him, a special use permit to operate an automatic changeable sign. Under Fridley, Minn., City Code 214.07.1.A (2002), the special use permit is issued subject to "[c]onformance to the sign requirements within that district." Fridley, Minn., City Code § 214.04.6, which prohibits the use of "motion signs," applies to all districts within Fridley. Scott Hickok, Fridley's community development director, testified that Dahl had obtained a special use permit to operate an automatic changeable sign, but the special use permit was granted upon the conditions that (1) the sign be operated within all of the confines of the law, (2) a building permit be obtained, and (3) the sign be constructed in accordance with the law. Hickok is responsible for enforcing Fridley's city code.

1. The Fridley city clerk has certified that the provisions of the city code cited in this opinion were in effect in 2002 during the events at issue. We have relied on the certification by the city clerk and refer to all provisions as though actually issued in 2002.

Dahl's new sign was installed in late December 2001. Dahl testified he initially let the sign sit blank because he was unsure what the sign could display. In March 2002, Dahl turned the sign on, displaying the message "Walk In For Better Health," accompanied by flickering snowflakes. That evening, Sergeant Crestik of the Fridley police issued Dahl two citations for violating Fridley's sign ordinances.

On Monday morning, Dahl contacted Hickok to discuss his situation. Dahl attended a meeting that day with Hickok, the city attorney, and Paul Bolin. Dahl testified that at this meeting the city told him the citations had been issued because the snowflakes "flash[ed]" and that when the message spread apart before changing, the sign created the illusion of motion and therefore violated the city's sign ordinances.

At this meeting, the discussion moved from the message that was displayed to whether Fridley would cite Dahl for displaying a waving American flag. Dahl testified that he was told, "If you [display the flag] we want to know when you're going to do it because we don't want the police to have to be on over-time when they arrest you." Dahl then countered with, "How about seven o'clock on Thursday night?" Hickok, however, testified to a very different version of the flag discussion. He testified, Fridley's statement was, "The American flag is fine, but don't run contrary to those two elements that have been discussed." Hickok testified that Dahl responded, "I'm going to turn it on. As a matter of fact, let me give you the date and time. . . . And if the city doesn't want to change the code, I will embarrass them into doing so."

At approximately 7 p.m. on Thursday, April 3, 2002, Dahl turned on the sign displaying a waving American flag. He was issued a citation for violating the sign ordinances. He was also issued additional citations thereafter.

The city charged Dahl with four counts of violating Fridley, Minn., City Code § 214.04.6 for operating a sign displaying motion, four counts of violating Fridley, Minn., City Code § 214.04.4 (2002) for operating a sign that caused traffic distraction, four counts of violating Fridley, Minn., City Code § 214.04.7 (2002) for operating a sign using flashing lights, four counts of violating Fridley, Minn., City Code § 214.07.1 (2002) for operating a sign with messages changing more than every 15 minutes, and four counts of violating Minn.Stat. § 609.74, subd. 2 (2000), for operating a sign that caused a distraction that endangered or harmed passing motorists. Dahl moved to dismiss the complaint, and the trial court issued an order dismissing the charges for distracting traffic under Fridley, Minn., City Code § 214.04.4 and the charges for operating a sign with messages changing more frequently than 15 minutes under Fridley, Minn., City Code § 214.04.07.1.

The case proceeded to trial on the charges of displaying a motion sign and a flashing sign under city ordinances, and endangering or harming motorists under Minn.Stat. § 609.274. The jury found Dahl not guilty of displaying a flashing sign and not guilty of causing a distraction that endangered or harmed passing motorists but found him guilty of displaying a motion sign. The court sentenced Dahl on all four counts of displaying a motion sign to identical, concurrent sentences of 30 days in jail, stayed, and a $700 fine, $300 of which was stayed.

## ISSUE

Is a city ordinance that prohibits operating signs that revolve, rotate, have moving parts, or give the illusion of motion an

unconstitutional abridgement of the freedom of speech?

## ANALYSIS

Dahl argues the motion sign ordinance violates the First Amendment to the United States Constitution. Evaluating the constitutionality of a statute is a question of law, which this court reviews de novo. *Hamilton v. Comm'r of Pub. Safety,* 600 N.W.2d 720, 722 (Minn.1999).

Under Fridley city code, a "motion sign" is a "sign which revolves, rotates, has moving parts or gives the illusion of motion." Fridley, Minn., City Code § 214.02.19 (2002). Another provision of the code lists signs that are prohibited in all districts of the city. Fridley, Minn., City Code § 214.04 (2002). Included in the list of prohibited signs are "[a]ny motion signs." Fridley, Minn., City Code § 214.04.6.

 The First Amendment provides that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. The freedom of speech clause applies to the states through the Fourteenth Amendment. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 489 n. 1, 116 S.Ct. 1495, 1501 n. 1, 134 L.Ed.2d 711 (1996). Provisions of law that regulate a medium of communication, such as the posting of signs, often affects speech and are subject to first amendment scrutiny. *See, e.g., City of Ladue v. Gilleo,* 512 U.S. 43, 48, 114 S.Ct. 2038, 2042, 129 L.Ed.2d 36 (1994) (stating "because regulation of a medium inevitably affects communication itself, it is not surprising that we have had occasion to review the constitutionality of municipal ordinances prohibiting the display of certain outdoor signs").

 If a provision seeks to limit when, where, or how means of expression may be used, it is analyzed to determine if it is a valid "time, place, and manner" regulation. *Hill v. Colorado,* 530 U.S. 703, 725–26, 120 S.Ct. 2480, 2494, 147 L.Ed.2d 597 (2000). A provision of law that regulates the time, place, or manner of protected speech must be narrowly tailored to serve the government's substantial and content-neutral interests while leaving open ample alternative channels, but the regulation need not be the least restrictive or least intrusive means of doing so. *Ward v. Rock Against Racism,* 491 U.S. 781, 797–803, 109 S.Ct. 2746, 2757–60, 105 L.Ed.2d 661 (1989); *see Hill,* 530 U.S. at 725, 120 S.Ct. at 2494 (holding statute was valid time, place, and manner regulation "under the test applied in *Ward*").

 The Fridley motion-sign ordinance serves the government's substantial and content-neutral interest and leaves open ample alternative channels. The prohibition of motion signs does not disfavor any message and therefore is a content-neutral regulation. *See Ward,* 491 U.S. at 791, 109 S.Ct. 2746 at 2754, 105 L.Ed.2d 661 (stating "principle inquiry in determining content neutrality … in time, place, or manner cases … is whether the government has adopted a regulation of speech because of disagreement with the message it conveys"). Fridley's goal in prohibiting motion signs is to promote traffic safety by limiting driver distractions, which is unquestionably a substantial government interest. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507–8, 101 S.Ct. 2882, 2892–93, 69 L.Ed.2d 800 (1981) (stating it "is far too late to contend" traffic safety is not a substantial government interest).[2]

**2.** Contrary to Dahl's contention, parts I through IV of *Metromedia* express the opinion of a majority of the Supreme Court. *See*

*Metromedia,* 453 U.S. at 540–41, 101 S.Ct. at 2909–10 (Stevens, J., dissenting in part) (joining Parts I through IV); *City of Ladue,* 512

Finally, the regulation leaves open ample alternative channels because it allows any speech on a sign that does not revolve, rotate, have moving parts, or give the illusion of motion. *See Ward,* 491 U.S. at 802, 109 S.Ct. at 2760 (concluding regulation limiting sound amplification at Central Park Bandshell "easily met" ample alternatives requirement where "the guideline continues to permit expressive activity in the bandshell, and has no effect on the quantity or content of that expression beyond regulating the extent of amplification").

 In examining whether a time, place, or manner regulation is narrowly tailored to serve the government interest there is a crucial distinction to be made when the regulation "does not entirely foreclose any means of communication." *Hill,* 530 U.S. at 726, 120 S.Ct. at 2494. When a regulation does not foreclose the means of communication, "the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward,* 491 U.S. at 799, 109 S.Ct. at 2758 (quotation omitted). Where a legislative body has made a reasonable determination that its legitimate interest would be served less effectively without the regulation the courts should defer to that decision. *See id.* 491 U.S. at 800, 109 S.Ct. at 2758 (stating it is not court's prerogative to replace its judgment for "the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted" (quotation omitted)); *Hill,* 530 U.S. at 727, 120 S.Ct. at 2495 (where regulation does not foreclose means of communication, court "must accord a measure of deference to the judgment" of legislative body).

Here, the city code only prohibits the manner in which signs can operate. It does not prevent use of signs as a means of communication; any message can be displayed on a sign as long as the sign does not revolve, rotate, use moving parts, or give the illusion of motion. Fridley determined that its legitimate goal of preventing traffic accidents would be served less effectively if motion signs were not prohibited. We see no reason to conclude such a common-sense determination is unreasonable, and therefore we defer to Fridley's decision to prohibit motion signs in order to promote traffic safety.

 Dahl also argues that the evidence was "insufficient as a matter of law" to support his conviction for operating a motion sign because Fridley had granted him a special use permit to operate an automatic changeable sign and it is "physical[ly] impossible to change the message on an automatic changeable sign without engaging in what the sign ordinance would deem 'flashing' or 'motion.'" Under the ordinance that allowed the city to issue the special use permit, the permit is issued subject to "[c]onformance to the sign requirements within that district." Fridley, Minn., City Code 214.07.1.A. Since the prohibition against motion signs applies throughout Fridley, a special use permit for an automatic changeable sign does not excuse the grantee from the prohibition against motion signs.

 Dahl also argues he is entitled to a new trial because "it was plain error to exclude the testimony of [a witness]." Since he provides no legal argument or authority and we see no obvious prejudicial error, we deem this issue waived. *See State v. Modern Recycling, Inc.,* 558 N.W.2d 770, 772 (Minn.App.1997) (stating

U.S. at 49, n. 8, 114 S.Ct. at 2042, n. 8 (noting

five Justices joined in Part IV).

assignment of error in brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection).

## DECISION

The Fridley city ordinance prohibiting motion signs does not violate the First Amendment. The evidence is sufficient to support Dahl's conviction.

**Affirmed.**