OPINION
MINGE, Judge*
In this pre-enforcement declaratory judgment challenge to an administrative rule regulating fishing on Mille Lacs Lake, petitioners assert that the rule is invalid because: (1) the administrative record does not reference or discuss the relevance of article XIII, section 12, of the Minnesota Constitution (the Preservation Provision) or the public-trust doctrine, and (2) the rule is beyond the authority of the Minnesota Department of Natural Resources (the DNR) under Minn.Stat. § 14.69 (2014). We declare the rule valid against these challenges.
FACTS
Petitioners have brought á pre-enforcement challenge to Minn. R. 6264.0400, an emergency rule adopted by the DNR to govern fishing on Mille Lacs Lake, Minnesota’s second largest inland lake. 38 Minn. Reg. 1379 (Apr. 21, 2014) (to be codified at Minn. R. 6264.0400, subp. 4 (Supp. 2014)). Mille Lacs Lake contains several species of fish, including walleye, northern pike, and largemouth and small-mouth bass.
The DNR regulates the fish that may be harvested from Mille Lacs Lake in conjunction with Native American communities that possess treaty fishing rights. Each spring, the DNR determines a “har-vestable surplus” of fish by calculating the pounds of fish that, if harvested, would not result in a decline of the fishery. The harvestable surplus is then allocated be *848 tween the Native American communities and the state, and the DNR considers whether it is necessary to establish rules restricting fishing on the lake to ensure that the state does not exceed its allocation.
The calculated, harvestable surplus of fish from Mille Lacs Lake in 2014 declined drastically, as compared to the previous year. As a result, the DNR determined that significant restrictions needed to be established for the 2014 fishing season to ensure that the state did not exceed its correspondingly reduced allocation. The DNR crafted several proposals to limit the taking of fish, presented those proposals to interested parties, and solicited public comment. Based in part on the responses received, the DNR adopted an emergency rule that restricted the size and number of northern pike, bass, and walleye that each person could take and limited the season for taking largemouth and smallmouth bass.[1] Shortly after the rule went into effect, petitioners filed a petition for declaratory judgment in this court challenging the validity of the rule.
ISSUES
I. Do petitioners have standing to bring this action?
II. Is the rule invalid because the administrative record does not specifically refer to the Preservation Provision or the public-trust doctrine?
III. Does the scope of judicial review stated in Minn. Stat. § 14.69 apply to a pre-enforcement declaratory judgment proceeding?
ANALYSIS
I.
At the outset we address the issue of standing. “Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court.” State by Humphrey v. Philip Morris Inc., 551 N.W.2d 490, 493 (Minn.1996). Minnesota Statute section 14.44 (2014) grants standing for pre-en-forcement challenges to rules to any petitioner who demonstrates that “the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the petitioner.” Minnesota courts have held that “Standing is acquired when a party has suffered some ‘injury-in-fact’ or when a party is the beneficiary of some legislative enactment granting standing.” Citizens for a Balanced City v. Plymouth Congregational Church, 672 N.W.2d 13, 18 (Minn.App.2003) (citing Philip Morris Inc., 551 N.W.2d at 493).
The petitioners include non-profit associations committed to preserving sport fishing in Mille Lacs Lake and more broadly, residents of the Mille Lacs area who are actively involved in fishing in that lake, and Twin Pines Resort, Inc. that serves the fishing community on that lake. The Preservation Provision recognizes fishing as an important part of the heritage of all Minnesotans. Subject to compliance with reasonable regulation, the Preservation Provision essentially recognizes that fishing is a right of all Minnesotans who obtain a fishing license. The residents claim that they and others of like mind have a strong interest in fishing Mille Lacs Lake in particular and that fishing this lake is an important part of their way of life and heritage. The resort asserts that diminution of fishing opportunities will adversely affect its business and the business of similarly situated resorts and other enterpris *849 es. The emergency regulation at issue in this proceeding limits the number and size of fish that may be kept and shortens the fishing season for bass. We note that for many years controversies concerning fishing this lake have been the subject of high-profile litigation. See Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 175-88, 119 S.Ct. 1187, 1191-97, 143 L.Ed.2d 270 (1999) (discussing previous challenges to validity of fishing rights).
The concurrence would dismiss the petition for lack of standing. The DNR did not raise the issue of standing in this proceeding.[2] Based on the nature and interests of the petitioners and the broad statutory language establishing a right to challenge regulations before enforcement, we decline to sua sponte dismiss this action on the basis of standing.
II.
We next consider whether the DNR was required to address or at least refer to the Preservation Provision and the public-trust doctrine in adopting the rule in question. The Preservation Provision is entitled “Preservation of Hunting and Fishing” and states that “Hunting and fishing and the taking of game and fish are a valued part of our heritage that shall be forever preserved for the people and shall be managed by law and regulation for the public good.” Minn. Const, art. XIII, § 12. The Preservation Provision recognizes the “need for effective regulation to protect the viability of our state’s fish and game resources.” State v. Colosimo, 669 N.W.2d 1, 6 (Minn.2003). The public-trust doctrine is a common-law principle, adopted in Minnesota, providing that the state, in its sovereign capacity, holds absolute title to “all ... navigable waters and the soil under them for [the] common use” and imposes a duty upon the state to maintain those waters for navigation and other public uses. State v. Longyear Holding Co., 224 Minn. 451, 472-73, 29 N.W.2d 657, 669-70 (1947) (quotation omitted). Petitioners assert that the DNR was required to address or at least make specific reference to both the Preservation Provision and the public-trust doctrine in the administrative record of this emergency rule to demonstrate that it properly considered petitioners’ cultural heritage of fishing on Mille Lacs Lake and the heritage implications of the public-trust doctrine. Petitioners do not raise the issue of whether the rule violates the Preservation Provision or the public-trust doctrine.'
A. Scope of Pre-Enforcement Review
Our evaluation of petitioners’ claim involves several considerations. First, we consider the statute authorizing pre-enforcement review. This court has been granted jurisdiction to determine the validity of a rule in a pre-enforcement declaratory judgment action. Minn.Stat. § 14.44. A pre-enforcement challenge “questions the process by which the rule was made and the rule’s general validity before it is enforced against any particular party.” Minn. Chamber of Commerce v. Minn. Pollution Control Agency, 469 N.W.2d 100, 102 (Minn.App.1991) (quotation omitted), review denied (Minn. July 24, 1991). Because the “[b]road and far-reaching scrutiny of a rule or regulation, based upon hypothetical facts, is a premature exercise of the judiciary,” our standard of review is more restricted in a pre-enforcement proceeding than on appeal from a contested enforcement proceeding, where the validity of the rule as applied to *850 a particular party is being adjudicated. Id. at 102-08 (quotation omitted).'
Our authority to review the validity of a rule at the pre-enforcement stage is limited to three distinct inquiries: (1) whether the rule violates a constitutional provision; (2) whether the rule exceeds the statutory authority of the agency; and (3) whether the rule was adopted without compliance with statutory rulemaking proceedings. Minn.Stat. § 14.45 (2014). We do not possess the authority to expand the scope of judicial review at a pre-enforcement proceeding. See Manufactured Hous. Inst. v. Pettersen, 347 N.W.2d 238, 241 (Minn.1984) (limiting judicial review to those “three stated legal issues” at the pre-enforcement stage).
B. Citing Authority in Rulemaking
Petitioners correctly assert that the DNR did not state on the record that it considered the Preservation Provision or the public-trust doctrine before it adopted the emergency rule. We acknowledge that some reference to statutory or other legal authority is required in rulemaking. The Minnesota Administrative Procedure Act, Minn.Stat. §§ 14.001-.69 (2014), requires that Minnesota agencies provide a “citation to the most specific statutory authority for the proposed rule” when the agency gives notice of rulemaking proceedings. Minn. Stat. § 14.14, subd. la (2014); see also Minn.Stat. § 14.22, subd. 1 (2014) (governing notice of proposed adoption of rules without hearing).[3] The statutes that govern the DNR’s authority to enact emergency hunting and fishing rules do not impose any additional requirements that, are relevant to petitioners’ claim. See generally Minn.Stat. §§ 97A.0451-.0459 (2014) (establishing procedures for the enactment of emergency hunting and fishing rules).[4] Petitioners do not explain, nor can we discern, how this asserted omission from the administrative record fits into any of the three distinct grounds under which we may review the validity of this rule pursuant to Minn.Stat. § 14.45.
Here, the DNR, in providing notice of the rule, stated its statutory authority under Minn.Stat. §§ 97A.045, subd. 2 (2014); 97C.005, subd. 3 (2014); and 97C.401, subd. 1 (2014). These statutes, respectively, authorize the DNR to: (1) prohibit the taking of animals; (2) establish “open seasons, limits, methods, and other requirements for taking fish”; and (3) limit the number of fish a person may possess. See id. The plain language of these statutes is not inconsistent with the Preservation Provision’s mandate that the state “manage and regulate fishing to preserve our natural resources,” Colosimo, 669 N.W.2d at 7. We have previously stated that the Preservation Provision, in conjunction with other authority, establishes that the state maintains “control over when, how, and the extent to which fish *851 can be taken,” provided that the state does not exercise its authority “arbitrarily.” Mertins v. Comm’r of Natural Res., 755 N.W.2d 329, 340 (Minn.App.2008). The DNR’s citation to statutory authority demonstrates that it considered the objective of the Preservation Provision in its analysis, even if that Provision was not specifically referenced.[5]
We note that there are several cases in which we have reviewed a rule to ensure that it complies with relevant constitutional provisions. See, e.g., Minn. Chamber of Commerce, 469 N.W.2d at 107 (evaluating rule’s compliance with constitutional due process standards); Peterson v. Minn. Dep’t of Labor & Indus., 591 N.W.2d 76, 78-79 (Minn.App.1999) (evaluating rule’s compliance with equal protection rights), review denied (Minn. May 18, 1999). But there is a difference between our reviewing a rule to determine whether it complies with a constitutional requirement and a mandate that agencies specifically address all potentially relevant constitutional provisions during the rulemaking process. That caselaw recognizes the fact that we possess the statutory authority to evaluate whether a rule is constitutionally sound. See Minn.Stat. § 14.45 (permitting judicial review of whether agency rule complies with constitutional provisions). In none of these cases did we declare a rule to be invalid because the agency did not specifically identify arguably relevant constitutional provisions in the underlying administrative record or specifically articulate how it considered a constitutional provision in formulating the rule. Cf. Neeland v. Clearwater Mem’l Hosp., 257 N.W.2d 366, 368-69 (Minn.1977) (administrative agencies lack subject-matter jurisdiction to decide constitutional issues because those issues are within exclusive province of the judicial branch).
C. Application of the Public-Trust Doctrine
Caselaw in Minnesota on the scope and application of the public-trust doctrine is sparse. Few reported cases have considered this doctrine. See, e.g., Pratt v. State, Dep’t of Natural Res., 309 N.W.2d 767, 771 (Minn.1981); Longyear Holding Co., 224 Minn. at 473, 29 N.W.2d at 670; Nelson v. DeLong, 213 Minn. 425, 431, 7 N.W.2d 342, 346 (1942); Larson v. Sando, 508 N.W.2d 782, 787 (Minn.App.1993), review denied (Minn. Jan. 21, 1994). The foregoing caselaw has only applied the public-trust doctrine to find that the state is responsible for managing navigable public waters as a trustee for public good. We acknowledge that the public-trust doctrine has had significant application in some jurisdictions. Nat’l Audubon Soc’y v. Superior Court, 33 Cal.3d 419, 189 Cal. Rptr. 346, 658 P.2d 709, 719 (1983); Lake Beulah Mgmt. Dist. v. State, Dep’t of Natural Res., 335 Wis.2d 47, 799 N.W.2d 73, 84-86 (Wis.2011); see also Alexandra B. Klass, Reneivable Energy and the Public Trust Doctrine, 45 U.C. Davis L. Rev. 1021, 1027-32 (2012) (discussing application of public-trust doctrine to state lands *852 and waters). But no Minnesota caselaw has yet recognized the application of the public-trust doctrine to fishing, and petitioners cite to no such application elsewhere in the United States. Assuming that fishing resources are within the public-trust doctrine, petitioners’ argument that the DNR had an obligation to explicitly refer to the doctrine in adopting the challenged rule is not persuasive.[6] It would be a dramatic new rulemaking principle for us to impose upon agencies an expansive duty to identify and consider an undeveloped and possibly an irrelevant legal principle. Given the myriad of constitutional provisions and plethora of potential common-law theories that could be discussed incident to rulemaking, imposing such a requirement has no basis in precedent and could paralyze the administrative process. The statutes authorizing emergency rulemaking and pre-enforcement review imply that such agency action, and our review, are intended to make the process more flexible and expeditious, not more complicated.[7] See Minn.Stat. § 14.44; Minn.Stat. §§ 97A.0451-.0459.
In sum, in this pre-enforcement proceeding, the omission by the DNR of any citation to or consideration of the Preservation Provision or the public-trust doctrine does not affect the validity of Minn. R. 6264.0400, subp. 4.
III.
Petitioners also allege that the rule is invalid under Minn.Stat. § 14.69 because it: (1) exceeds the statutory authority or jurisdiction of the agency; (2) was made upon unlawful procedure; (3) is affected by other errors of law; and (4) is arbitrary and capricious.[8] But section 14.69 applies only on appeal from a final decision in contested case proceedings conducted pursuant to Minn.Stat. §§ 14.63-.68 (2014). Because this statute is not applicable to a pre-enforcement declaratory judgment proceeding, we decline to consider these additional arguments.[9]
DECISION
Because the omission from the DNR’s administrative record of any reference to *853 the Preservation Provision or the public-trust doctrine is not a basis for declaring Minn. R. 6264.0400, subp. 4, invalid in a pre-enforcement proceeding, we reject petitioners’ challenge to the validity of Minn. R. 6264.0400, subp. 4.
Rule declared valid.

 Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const, art. VI, § 10.

. The rule also prohibited fishing on the lake from 10:00 p.m. until 6:00 a.m. This nighttime-fishing ban was later lifted and is not a part of this appeal.

.. The DNR did not challenge petitioners' standing in its brief and discussed the issue at oral argument only after the panel inquired about it.

. Federal administrative law requires federal agencies to expressly cite relevant legal authority when the agency publishes notice of general rulemaking in the Federal Register. See 5 U.S.C. § 553(b)(2) (2012) (requiring "reference to the legal authority under which the rule is proposed”). The federal statute does not require citation to constitutional provisions or common-law doctrine when, as here, the agency possesses valid statutory authority to adopt the rule.

. Petitioners also contend that the DNR is capable of making findings regarding the effect its rule will have on the heritage of Mille Lacs Lake, citing the process for preparing an Environmental Impact Statement (EIS) and an Environmental Assessment Worksheet (EAW) as examples. See Minn.Stat. § 116D.04 (2014) (setting forth EIS standards and procedures): Minn. R. 4410.100 (2013) (noting standards for preparing EAW). But the statutes and regulations governing EIS and EAW do not apply.

. As stated earlier in this opinion, the record indicates that the DNR analyzed the fish population of Mille Lacs Lake, concluded that significant restrictions were necessary to ensure that the state did not exceed its allocation of the harvestable surplus, and held public meetings to determine the effect that these potential restrictions would have on the local community and economy. On this record, there is no basis to conclude that the DNR acted arbitrarily when it adopted Minn. R. 6264.0400, subp. 4. See Minn. Chamber of Commerce, 469 N.W.2d at 104 ("It is difficult to conclude that the MPCA arbitrarily and capriciously failed to consider social and economic factors, when public hearings were held in several locations and when the MPCA responded to public reaction by revising some of the proposed amendments.”).

. The DNR’s rule was apparently designed to preserve fish as a public resource in Mille Lacs Lake. To this extent, the rule appears consistent with the principles underlying the public-trust doctrine. See Longyear Holding Co., 224 Minn, at 473, 29 N.W.2d at 670 (discussing state's duty to preserve navigable public waters for the public good).

. We recognize that the statute does not require that a petitioner raise an objection before the agency to preserve his or her right to challenge the rule in a pre-enforcement declaratory judgment proceeding. Minn.Stat. § 14.44. But our review of the rule is limited to the record. It is difficult for this court to address an objection to a rule if the record does not contain the factual basis for the objection. Here, the record indicates that petitioners had the opportunity to attend several forums and to submit comments to the DNR for its consideration. See Pettersen, 347 N.W.2d at 241 (stating that rulemaking proceedings give interested parties considerable opportunity to advance their position at public hearings). There is no indication that an objection was made based on either the Preservation Provision or the public-trust doctrine during the rulemaking process.

. As stated earlier, we note that, except for the DNR's lack of a reference to the Preservation Provision or to the public-trust doctrine, petitioners do not raise the issue of whether there are other deficiencies in the emergency rule addressing fishing in Mille Lacs Lake.

. Petitioners also seek attorney fees in their petition for declaratory judgment. A prevailing party "in a civil action or contested case proceeding other than a tort action” may recover fees and expenses from the state if that party "shows that the position of the state was not substantially justified.” Minn. Stat. § 15.472(a) (2014). Because petitioners have not established any basis for relief, we do not address this issue.